Good morning. The first case on the call this morning, Agenda Number 1, Case Number 121932, People v. Harris. May it please the Court, Counsel, and Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. Controlling precedent from this Court and the United States Supreme Court defeats each of defendants' claims. Defendant sentence comports with this Court's longstanding interpretation of Article I, Section 11 and the United States Supreme Court's jurisprudence under the Eighth Amendment. It also comports with the widespread societal consensus that childhood ends at age 18. And the sentence comports with the factual realities of this case and defendants' level of culpability, as demonstrated by evidence from multiple witnesses in a corroborating surveillance video that proved beyond a reasonable doubt the defendant armed himself with a uniquely dangerous weapon, went to a busy gas station on a summer night, successfully shot two people in the back, and continued shooting at others until he ran out of bullets or his gun jammed. Thus, defendants' convictions and sentences are constitutional, and this Court should affirm the trial court's judgment. I'd like to focus on the sentencing challenges, but I'll welcome any questions the Court may have on any other issues presented. Turning first to defendants' Illinois constitutional claim. This is not this Court's first opportunity to interpret Article I, Section 11. For almost 45 years, including as recently as 2016, this Court has explained that Article I, Section 11 does not require the legislature to elevate the rehabilitative goal over the seriousness of the offenses when it fixes penalties. Indeed, it's not clear that the legislature must give greater consideration to either goal when it determines sentences. But the legislature may constitutionally fix mandatory penalties, both minimum and maximum, even though the penalties, by their nature, limit the judiciary's ability to craft individualized sentences. Thus, it's within the legislature's power to enact a lengthy minimum sentence that requires certain offenders to spend their lives in prison, just as it is within the legislature's power to enact shorter maximum sentences, even if they do not reflect the specific atrocities of the crime or the individual offender's criminal history. The elected representatives of the General Assembly constitutionally must balance both goals and decide the penalties for crimes, even if a particular judge does not agree with that democratically determined penalty for a specific offender. Counsel, was the appellate court then saying that any time the legislature requires a mandatory life sentence, it violates the proportionate penalties clause because the trial court can't consider the possibility of rehabilitation? The appellate court opinion suggests that, Your Honor. There's a couple contrary statements. In one instance, the appellate court says it's basing its holding on the specific factual circumstances of this case. But in the final paragraph of the decision, the appellate court discusses how it believes that Article I, Section 11, requires the judiciary to have the authority to do individualized sentencing determinations. And so it's unclear exactly what the appellate court intended, but the result of their rule, especially in this case, is that a trial court should always have, under the rehabilitation clause, the ability to craft a sentence based on the individual offender's sentence or circumstances. And so therefore, the legislature can't enact mandatory minimum penalties under the appellate court's reasoning. And I think that's evident by the facts of this case, Your Honor. This person was 18 and an adult. And the defendant's primary claim is that he is like Leon Miller, where this court found the sentence to be shocking to the moral sense of the community. However, defendant was an adult, as our society defines adulthood, and his level of culpability was nowhere near Leon Miller's level of culpability. So turning first to his age, defendant was 18 years old, and this court has considered juveniles to be those that are under 18. The legislature considers juveniles to be those that are under 18. And so that line that our society draws is based on the characteristics of juveniles that make them a special class and are the same ones upon which society makes lots of laws for children. Defendant feels to recognize that Leon Miller was not grounded in science at all, but he was grounded in the common sense, widespread understanding that children are children when they are under 18. And that's reflected in lots of laws, like the Juvenile Court Act and the special laws that we require for juvenile interrogations, juvenile arrests, and even other laws relating to the right to vote and serve on the military. And so that component of Leon Miller is not present here. Defendant was not a juvenile, as our society defines adulthood and draws the line between childhood and adulthood. And the second component of Leon Miller that's not present here is the degree of participation. The seriousness of the particular offender's crimes, and specifically his level of participation in the criminal acts, itself can support the mandatory life sentence. In fact, that is precisely what the court said in Leon Miller, was that a juvenile accomplice who actively participated in a crime could lawfully get, the legislature could lawfully say that mandatory life was the appropriate sentence. The court also said that for an adult principal, mandatory life without parole would be an appropriate sentence. And here we have an adult principal who decided to shoot at four individuals, successfully killing one, causing severe bodily injury and permanent disfigurement to another, and missing the other two. And so defendant's level of culpability is not comparable to Leon Miller, and given all these facts, defendant's sentence is not shocking to the moral sense. Unless this court has any further questions on the Illinois claim, I'd like to turn to the Eighth Amendment argument. It's defendant's burden to establish an Eighth Amendment violation just as it is for him to show a violation of the Illinois Constitution. As I alluded to, the Supreme Court, or as I said, our society has drawn distinctions between children and adults in many areas of the law. And the Supreme Court has done this, and drawn that line at 18, even in the face of scientific literature confirming that brain development is not complete at age 18. Our country continues to adhere to this line, and this court should likewise do so. Now, there may be a legislative movement to treat young adult offenders differently. Most of that movement is for non-serious crimes. It is not for crimes like homicide, like the one the defendant committed. And it's important to remember what Miller's foundational principles are. Defendant states that he is not asking for a seat change from this court, but that is precisely what he is asking for.  The first is that children are constitutionally different from adults under the Eighth Amendment. And that strand of precedent dates back to the 1940s, and it is grounded in our common sense understanding of children. That precedent does not exist for young adults, whose characteristics even science has still not defined. And so we don't know what characteristics young adults have, based on their science or otherwise. We just haven't defined them as a class. And the second line of precedent is that regarding individualized sentencing, which precludes capital punishment for any offender without an individualized hearing. But 18-year-olds in many states can get the death penalty, and so the harshest available penalty for 18- to 20-year-olds remains capital punishment and not life imprisonment or mandatory life imprisonment, as it was when Miller was decided for juveniles. And so neither strand of precedent that is the doctrinal foundation of Miller is present here. And so therefore, defendant's Eighth Amendment argument necessarily fails. Unless the court has any questions on any other issues or these issues, we ask the court to affirm the trial court's judgment. Seeing none, thank you. Good morning, Your Honors. May it please the court. Lauren Wowser from the Office of the State and Political Envoy on behalf of Darian Harris. I would like to focus today on Darian's challenges to the constitutionality of the sentence and of course answer any questions about his reasonable judgment. Today, Your Honors must consider whether the reasoning underlying the United States Supreme Court's decision in Miller v. Alabama that those adolescents who are under 18 are less culpable and more amenable to rehabilitation applies with equal force to a defendant like Darian Harris, who is a mere three months past his 18th birthday. As this court has already recognized in People v. Holman, the reasoning of Miller is much broader than its core holding. And the United States Supreme Court has recognized in Roper v. Simmons that the qualities that distinguish juveniles from adults do not disappear when an individual turns 18. So there are two key reasons why this court should find that the reasoning of Miller does apply to an 18-year-old like Darian. First, in the 13 years since the United States Supreme Court delineated a categorical sentencing rule for 18-year-olds, empirical research, sentencing practices, and legislative enactments have continued to evolve and continue to reflect the differences between youth and adults that justify different treatment for 18 and 21-year-olds. Second, looking at the facts of Darian's case that reduced that trial and at his sentencing hearing, he is not one of the rare teenage offenders who exhibits such irretrievable depravity that rehabilitation isn't possible. Despite these facts, the mandatory sentencing scheme in this case required the judge to sentence him to a de facto life sentence without being able to consider any of his characteristics of youth or individual circumstances. Counsel, no Illinois court has found a violation of the rehabilitation clause under similar facts, though, right? The appellate court in this case, obviously, and People v. House both found a violation of the rehabilitation clause applied to an 18-year-old in this case and a 19-year-old in People v. House. But under facts similar to this where the defendant is convicted of murder and gravely wounding a second person? In House, the defendant there was found guilty of two murders. Here, it was one murder. Are you arguing that it is improper for the legislature to draw a line of age? The legislature doesn't really draw a line. We're not challenging the notion that 18-year-olds could face a natural life sentence. We're challenging the constitutionality of the mandatory scheme by which Darien got a natural life sentence in this case. The legislature, the operative statutes here, in combination, precluded the court from looking at these characteristics of his youth. Under both the Eighth Amendment and the Illinois Constitution, at the core of both of those is the concept of proportionality. And the courts have recognized that we look at this concept of proportionality not through a historical lens, but based on society's evolving standards of decency. So are you making a facial challenge to the statute? And secondly, if you are, would your argument not apply to all mandatory minimum statutes? But first of all, is this a facial challenge? No, Your Honor. We're making an as-applied challenge, as-applied to Darien. And we argue under the Eighth Amendment as-applied to all 18- to 21-year-olds, the class of 18- to 21-year-olds. So it's a facial challenge to everybody who's 18 to 21, and then... Okay. And under the facts of Darien's case, it's an as-applied challenge to constitutional provisions. But this Court's already recognized that the Illinois Constitution goes further than the Eighth Amendment. It's specific language that the sentence must be determined with the objective of restoring the offender to youthful citizenship. In Clemens, this Court said that what that means is, in addition to looking at the act, the person committed, we have to look at the person who committed the act and determine to what extent he can be restored to youthful citizenship. A life imprisonment is the harshest penalty in the state of Illinois. And the Supreme Court of the United States has recognized that the risk of disproportionate punishment is higher when a young defendant is given a life sentence. On average, they're going to spend a much longer portion of their life in jail, and even if they are able to rehabilitate themselves over the years, there's no way for a mandatory natural life sentence to reflect that. In this case, it illustrates the concerns with disproportionality. Before a defendant under 18, the United States Supreme Court has said that a life sentence should be rare and uncommon. While still available, they should be rare. But in the moment a defendant in Illinois turns 18, he can be subject to a mandatory sentence that, according to the state, is unreviewable by this court. Those sort of extremes are not reflective of proportionality, specifically based on what we now know about the neurological differences between youth and adults. Those don't disappear at 18. As the court in Roper, Graham, and Miller stated, youth are different from adults in three important ways. They lack maturity, which makes them prone to risky behavior. They're vulnerable to negative influences, particularly negative peer pressure. And their character is not as well formed. So that makes it difficult to differentiate between the teenager, who reflects transient maturity, versus the rare juvenile offender, or rare youth, who's prone to represent irreparable proportion. In the, I was going to say trilogy, but maybe you had Montgomery. But in these cases in the United States Supreme Court in which they rely on evolving science, was that material introduced at the trial court? In this case? No. I'm sorry, in that trilogy case. Was a record developed as to current understanding by the scientific community as to brain science of young people? I believe in Miller specifically the challenges were made all along to the 14-year-old's maturity. I believe at Roper it was raised for the first time in a successive proceeding. So the courts in those cases, though, looked at it, of course, themselves to make those distinctions. So when you say that, did they, how does that work? How does the reviewing court look at new scientific studies? Well, so any evidence that's presented on these general characteristics of youth, it would be the same research studies that we presented whether we were in a trial court or here. This court has the same ability as a circuit court to look at scientific research that speaks generally to all teenagers and all youth. And that's, the way Miller sort of set up the scheme was they created a categorical rule and said, you know, we want to, all 18 and under fall within this categorical rule. But we're not going to say that you can't impose a sentence. Remand it to the trial court to actually be able to consider these things as they apply to the individual defendant. Because they're in a better position to look at this research that applies generally and apply it to a defendant where there can actually be a hearing where these sort of things can be brought up. But they wouldn't be in a better position to evaluate the validity of the extensive authority we've cited that shows that these developments in science continue to show that these characteristics continue into the mid-20s. The state suggested it would be improper for this court to consider these scientific studies and that only the legislature can do so. I want to point out that, of course, the court enrolled Brandon Miller and validated several states' sentencing schemes by looking at the science themselves. And the Supreme Court has said in the context of the Eighth Amendment, in the context of capital punishment for developmentally disabled, that courts must consider and cannot ignore scientific consensus in making these determinations about evolving standards in society. Importantly, since Roper was decided in 2005 over a decade ago, since that time, Dr. Lawrence Steinberg, one of the experts that the Roper Court specifically relied on, and is cited by both parties in the briefing, has opined that if he conducted that same study today, he would conclude that it is not applicable up to the age of 21. Looking at state and federal practice, we've provided many examples in the briefs of state and federal law are continuing to recognize a distinct class of defendants aged 18 to 21 in the law for differential treatment. This court specifically, in People v. Mosley, cited the immaturity and impulsivity of youth in justifying a prohibition on the poor Second Amendment right of carrying firearms for those under 21. So this court has already recognized that the immaturity of youth can create different rights and obligations under the Constitution. There are other limitations on 18-year-olds, like Darian, such as purchasing alcohol, renting cars. As the court recognized here, and also recognized the appellate court in this case, and in People v. House, the designation in our sentencing law is that after 18 an individual is a mature adult appear to be somewhat arbitrary. Are you asking us to fix a different arbitrary age? We're asking this court to recognize what the science has now made clear, and that the rationale underlying the court's decision in Miller applies equally for those up to 21. However, obviously, in this case, the court doesn't need to rule on whether it's applicable to someone up to 21. I believe the science supports that, but here we're only asking the court to recognize that three months after 18 is not a reasonable cutoff. It reflects a higher risk of disproportionate sentence. When Darian's sentence changed overnight, he was facing a mandatory life sentence. So what does the trial court do if we agree with you here? Does it look at each individual and decide at what age the statute applies and at what age it does not apply? Well, we would ask this court to create a categorical rule that those youth under 21, the court is required to consider their youth and individual circumstances in sentencing them. However, the Illinois Constitution, with its rehabilitation clause, would allow for a case-by-case analysis as well. So I guess we often defer to the legislature because if it's investigating fact-finding powers and we assume that they have taken all of this into consideration, including the evolving science on brain development, but you're asking us to make that determination at age 21 as opposed to 18. In the Eighth Amendment and Illinois Constitutional jurisprudence about rehabilitation, the courts have said that while national consensus and laws are important, ultimately this court does need to bring its own judgment to bear. And as I mentioned, in Roper, Graham, and Miller, the Supreme Court invalidated lots of legislatively mandated sentences because they looked at the science and said it can't justify sentencing those under 18 to die in prison without even looking at these important factors that play into their culpability and their ability to be rehabilitated. So the Supreme Court has made clear that the court does have to exercise its independent judgment in the realm of what the evolving societal standards are. Are we supposed to look only at the age of the defendant? Or should we be looking at the age and the ultimate sentence based upon the mandatory enhancements? I believe both. It's critical to the Supreme Court's decision was the fact that life sentences besides death, the most irrevocable and serious sentence an individual can face, and doesn't allow for any reflection of rehabilitation. So specifically, it was the nature of the life sentence with no possibility of parole that animated the court's decision in that case. So if the mandatory is here, it ended up with the defendant being eligible for release at age 75, would we be in the same position? Or 60? I know that this court has a case on its docket where we'll soon be grappling with what exactly de facto life means. I think that 75 might still put Darian in a place where his prison sentence would exceed his life expectancy. But in this case, his release at 89 is certainly beyond whatever that line would be for the possibility of rehabilitation and release of his lifetime. Can I ask a question? If we were to agree with you and to remand for resentencing, what would that resentencing hearing look like? At that resentencing hearing, we would ask that the judge have the discretion to consider characteristics of youth without regard to the mandatory characteristics that were in the sentence here, without the mandatory enhancements, without the mandatory consecutive sentencing. So at the hearing, the court would be able to look at things like was this a crime as a result of impulsivity, as a result of peer pressure? Look at Darian's individual characteristics, showing he's not an irretrievably depraved teenager who has no possibility of rehabilitation. And the court should be able to consider all those things. And of course, at a hearing like that, the state could present additional aggravation, suggesting he maybe was. None of that happened here because the judge's hands were tied and all the parties all agreed this was a natural, basically a de facto life sentence. And there's no need to present that kind of evidence before the trial court below. These events occurred, of course, seven years ago. Would the court be required to consider who he was seven years ago? Or would the court be able to consider conduct in the penitentiary? How would all these things apply in the real world? I do think that the court would be required to look at the whole picture, especially, of course, focusing on the defendant, the evidence of who he was at the time of the offense. Subsequent conduct in the penitentiary would be relevant, but also it's maybe not as the weight to be given to it might not be as high because an individual who has no hope of ever getting out might have different incentives to rehabilitate himself in prison. And how does a trial court do all of that? Just a person, lawyer, becomes a judge. How does a trial court balance all those things? What guidance would the court have? I think Miller and the Supreme Court decision in Montgomery do provide that. First, stating that these sentences should be rare. They should be only applicable to a defendant who reflects irretrievable depravity. For example, this court in Holman looked at the defendant there, whether he had a hearing that took his youth into account. They focused on the fact that in the PSI they had said that he had no rehabilitative potential. And they looked at other facts that were listed in his trial to suggest that this is the kind of defendant who warrants a natural life sentence and maybe is not amenable to rehabilitation. So the court would just have to do the same kind of weighing it does in every case, but pay particular attention to the factors of youth, the particular facts of the defendant's background, and whether he is unable to be rehabilitated based on the facts available to the court. The court wasn't able to consider any of that, including the fact that Mr. Harris was finishing high school at the time of the crime, completed his GED while in custody. Several letters written to the court noted that he was normally a kind, caring kid, a gentle disposition, suggesting perhaps this was a peer pressure compulsiveness, not the worst of the worst teenager who at three months past his 18th birthday would now be required to die in prison. So the court should be able to consider that. And obviously trial courts are in the best position to weigh those kind of factors. Your Honors, youthful offenders have different biological and developmental characteristics that make them different from adults, and the law and constitution require a different treatment of youth. This court is obviously an important voice, and the public courts below are grappling with this. Some public courts have been finding that Miller applies beyond 18. Others are reluctant to go there. So I think this court's voice is important in recognizing that the science that underlies the Miller decision is applicable to an 18-year-old like Derry Harris. Your Honors, have any other questions? Seeing none, thank you. Counsel, do you agree with opposing counsel that other cases have similar facts? No, Your Honor. People v. House is different because the defendant there was convicted under an accountability theory, and so his degree of participation was different. That is the only other case in which an Illinois court has found an Article I, Section 11 violation for a mandatory sentence imposed on an adult offender. Another case that's worth pointing out is Ybarra, and that was a case where the appellate court rejected an Article I, Section 11 challenge to, I believe he was 18, but he may have been somewhere between 18, or maybe he was 20, but he was between 18 and 20. And there, there was substantial evidence of mitigation based on his childhood. Ybarra grew up with extreme poverty, his father was a gang member, he had drug abuse, there was physical abuse, low IQ, developmental disabilities, poor school performance, lots of mitigating factors in Ybarra, and the appellate court stated, consistent with this court's longstanding jurisprudence, that Article I, Section 11 does not require the legislature to give greater weight or consideration to the rehabilitative goal, and it can't consider the seriousness of the offenses as themselves warranting life in prison. It's a balancing that the legislature is tasked with doing, and it does all the time when it enacts mandatory minimum and maximum sentences. There's a distinction between defendants' Article I, Section 11 argument and the Eighth Amendment argument, and I think some of the Justices were discussing remedy and what that would look like, and the difference is that the Illinois Constitutional Court decided to sentence this defendant to life in prison, and so were the courts to find that it is so shocking, then the defendant could not receive life imprisonment on remand. But the Eighth Amendment asks a different question, and that is whether there is a national consensus, and this court's independent judgment, warrant a categorical rule against mandatory life without parole for 18- to 20-year-olds. It's similar, it's just like the Miller rule. And that, the remedy, is different. It isn't individualized, it's inherent, like that that this court explained in Holman would occur for a juvenile. So those are distinctions in the doctrinal components of these two challenges, and then the remedies would change depending on that. The trick here in this case, Your Honor, is that there's been no factual development in the trial court, and although the defendant says that he could not have presented any evidence on these issues because the sentence was mandatory, that's simply not true. Leon Miller is a perfect example of a case where the trial court had found that the defendant's mandatory sentence was disproportionate to the particular offender, and then imposed a 50-year sentence, and that was what was appealed to this court, and this court affirmed the trial court's judgment. So there's always an opportunity, as Holman states, for a defendant to present a record and argue that his mandatory sentence violates Article I, Section 11, and defendant very well could have done so here, particularly where he was sentenced in 2014, well after Roper, Graham, Miller, the trilogy of cases. I'd like to turn to the science quickly, Your Honor. The defendant asked this court to choose a point at which persons are fully mature, when science itself can't determine one. 21 is just as arbitrary as 18 under the science as it exists, but our democratically determined line is 18, and that's the one that's widely accepted, not just in Illinois, but by courts across the country, and in fact, most of the world, and so we're asking that this court not substitute its judgment for that of the legislature, particularly when any other line would be just as arbitrary, but 18 is the same as that is drawn for many purposes, if not most purposes, in our country. Defendant cites Mosley, but Mosley, again, was grounded in the legislative judgment, and yes, it's supported by the indisputed fact that a person is not fully mature at 18, but that, again, was a legislative determination, and I'd like to turn to what Miller really does with science, and what Roper does with the science. The court rests its attention on an extension of lots of precedent that have constantly said, children are different. Children are different under the law in many circumstances. As JTV versus North Carolina notes, no science is necessary to know that children possess these qualities of youth and its attending characteristics, and of course, we still don't know what that means for young adults, but what the scientific research does, and whatever lack of evidentiary record there was in those cases, the science provided confirmation of our societal understanding and explanations for why our children possess these characteristics. It's what has been, I think, in the terms of the U.S. Supreme Court in many of the cases. It's a universally held notion. It's common sense. It's widespread understanding. These are the words the court uses as for when describing children, and that line is at age 18, and so while scientific research strengthened and underscored the Supreme Court's conclusions in those cases, it was not the basis on which the court drafted categorical bars. Instead, it was based on a mismatch. We treat children differently in lots of areas, but why not for sentencing, and that was the legislative judgment that the court was concerned about, and as for the national consensus, yes, there was a national consensus in favor of sentencing juveniles to mandatory life, except that the court said, again, that's inconsistent with what our society knows about children, and more importantly, like in Leon Miller, the sentence resulted from transfer provisions, often mandatory transfer provisions, accountability provisions, lots of circumstances that perhaps the legislature didn't endorse that specific penalty for that particular offender, and so those are the foundational principles, and they are not present yet for 18 to 20-year-olds, and so we urge the court to affirm the legislative judgment, which is consistent with our national consensus, and find that there is no Eighth Amendment violation here. May I have just one moment here? I'd like to briefly just touch upon the factual developments a little bit. A defendant cites Steinberg's examination in, I believe it was the Connecticut District Court. The problem is that the people haven't had an opportunity to cross-examine Professor Steinberg. We haven't had an opportunity to challenge his conclusions. There are lots of articles out there, Your Honor. I've provided a number of them, but certainly not the breadth of articles on this issue. It is being considered by our legislature. It is being considered across the country, and so we ask this court to maintain the legislative judgment, give the legislature the opportunity to consider these issues, and affirm defendants' convictions and sentences. Unless the court has any further questions. Seeing none, thank you. Case number 121932, people of the State of Illinois v. Darien Harris, will be taken under advisement as Agenda Number 1. Ms. Kasha, Mr. Bowser, we thank you for your arguments today. You're excused for their things.